IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

ANTONIO BROWN,

      Defendant.

Case No. 5:19-cr-40081-HLT

## MEMORANDUM AND ORDER

On August 21, 2019, a grand jury returned an indictment charging Defendant Antonio Brown with two counts of possession with the intent to distribute a controlled substance, one count of possession of a firearm by a prohibited person, and one count of possession of a firearm in furtherance of a drug trafficking crime. Brown now seeks dismissal of the indictment under Federal Rule of Criminal Procedure 12(b). Doc. 55.

Brown first argues that the indictment should be dismissed in its entirety because, during grand jury proceedings, the government presented false and misleading testimony on material factual issues, affecting the grand jury's decision to indict. In the alternative, Brown argues the undisputed evidence establishes that he cannot, as a matter of law, be convicted of Counts 1, 2, and 4, and thus those counts must be dismissed. Having reviewed the briefing and the materials submitted by the parties, and for the reasons discussed below, the Court rejects both arguments and denies Brown's motion to dismiss.

I.      BACKGROUND

A.      **Events Leading to Indictment**

For purposes of the motion to dismiss, the parties agree on the pertinent facts. In the early

morning hours of May 10, 2019, the Lawrence, Kansas 911 dispatch received a call from a woman

who reported that she "was pretty sure" that the occupants of the car in front of her had fired

gunshots. The caller stated the shots had been fired in an area known locally as "Tee Pee Junction."

While she was still on the phone, the caller—who, by the time of the 911 call, had moved to the

parking lot of a gas station—again spotted the car, this time pulling into the same gas station

parking lot. She believed she recognized the car's occupants and told 911 they had been patrons

at the adult entertainment club where she worked earlier that night. The caller described the

individuals and their car, which she identified as a small, dark-colored sedan.

Members of both the Douglas County Sheriff's Office and the Lawrence Police

Department responded to the call. One officer went to the Tee Pee Junction area, where he found

three spent shell casings (later identified as 9mm casings) on the side of the road; the location of

the casings indicated to the officer that the shots had been fired from the passenger side of the car.

Other officers began patrolling the area looking for the suspect car, and ultimately spotted a car

matching the caller's description. That car (a 2000 Chevrolet Malibu) eventually came to a stop

and officers observed two occupants—the driver and a front-seat passenger—exit the car and begin

to walk away.

At this point, the officers approached, stopped the driver, and began asking him questions.

The driver, later identified as Bounsouay Khanya, denied there were any firearms in the car.

Meanwhile, the passenger—who had been on the phone when the officers initially approached—

also came over and entered the conversation between the officers and Khanya. The passenger was later identified as Brown.

While the officers were talking to Khanya and Brown, another officer on the scene used his flashlight to illuminate the interior of the car, and, through the window, spotted the black grip of a handgun under the front passenger seat. Following this observation—and having confirmed with the officer who had been at the Tee Pee Junction site that, based on his investigation, the shots had originated from the car's passenger side—officers detained Brown.

Khanya was also detained, and, during the pat-down search, officers found a large sum of cash and six individual baggies, each containing a white powdery substance (later determined to be cocaine), in Khanya's pockets. Both Khanya and Brown were read their rights, refused to speak to the officers, and were placed in the back of patrol cars. While in the patrol car, Khanya asked one of the officers whether, given that the officers had "found everything on" him, officers would let Brown go. Khanya continued: "So everything's done with. Since I'm a drug user; it's all on me and we just going to jail. . . . You just got everything on me. So since you got everything on me, we can just go to jail."

While still at the scene, officers searched the car. On the driver-side floorboard, officers found a red backpack that contained a total of 21 bags of marijuana, two individual bags of methamphetamine, a small baggie of cocaine, and two large stacks of money. Under the front passenger seat, officers recovered the firearm, which was identified as a Walther 9mm. On the front passenger seat, officers found a loose 9mm bullet sitting under a wallet containing Brown's identification. In the trunk, officers found a black backpack, which contained a stack of Ziploc-style baggies, a plastic bag of methamphetamine, a scale with white residue, and approximately five smaller baggies of cocaine. Cellphones were also located on the floor of the back seat, in the

black backpack, and on Brown's person. Both Brown and Khanya were transported and booked into the Douglas County Jail. Officers seized the evidence found in the car and also obtained a search warrant to authorize another search of the car. The subsequent search netted additional evidence, including another 9mm round, seven boxes of Ziploc bags, one additional phone, and two spoons with white residue.[1]

During the ensuing investigation, data from the phones found in the car—all three of which are believed to belong to Khanya—was downloaded for forensic analysis. The cell phone evidence includes photographs of Khanya, multiple images of a hand holding marijuana, and text messages discussing selling drugs.[2] Officers also took DNA swabs from both sides of the firearm's handle to compare to swabs taken from Khanya and Brown. The DNA profile from the right side of the handle was not suitable for comparison due to the potential number of contributors and the amount of genetic information present. The profile from the left side contained a partial major DNA profile of an unknown contributor and a partial minor DNA profile that was insufficient quality for comparison.

### B.      Evidence Presented for Indictment

On August 21, 2019, the government empaneled a grand jury. The government's only witness was Special Agent Steven Waters of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") (who, Brown points out, was not actually involved in the events giving rise to the arrests). The present motion to dismiss is largely based on Brown's allegations that the government, in making its case to the grand jury, presented testimony from Agent Waters that was

---

[1]    In sum, the total amount of drug evidence found in the car (as weighed by an uncertified scale) was: 468 grams of marijuana, 552.3 grams of methamphetamine, and 56.86 grams of cocaine. The total amount of cash found in the car was $11,631.06.

[2]    The data from the phone found on Brown's person could not be downloaded.

materially false, misleading, and improper. Brown takes issue with three specific pieces of testimony. The first piece of testimony identified by Brown is as follows:

> Counsel:        [W]hen officers retrieved the gun [from the car], did they notice anything else?
>
> Agent Waters:   Yes. [Brown's] identification was right next to the firearm.

The second piece of testimony is as follows:

> Counsel:        [Y]ou did note that there was a firearm and it was in the passenger side. Did [the officers]—were they aware of who they believed the firearm belonged to?
>
> Agent Waters:   Yes.
>
> Counsel:        And who was that?
>
> Agent Waters:   [Brown].

The third and final piece of testimony is as follows:

> Counsel:        Once [Brown and Khanya] were detained, what occurred?
>
> Agent Waters:   Both individuals invoked their rights, so they said they didn't want to speak any further.

Following presentation of the testimony and other evidence, the grand jury returned an indictment charging Brown with four counts: (1) possession with the intent to distribute a controlled substance (50 grams or more of methamphetamine) under 21 U.S.C. § 841(a)(1); (2) possession with the intent to distribute a controlled substance (a detectable amount of cocaine) under 21 U.S.C. § 841(a)(1); (3) possession of a firearm by a prohibited person under 18 U.S.C.

§ 922(g)(1); and (4) possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A).[3] Doc. 1.

## II.      STANDARD

Rule 12(b) authorizes a criminal defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). This includes motions to dismiss alleging a defect in instituting the prosecution of the case or a defect in the indictment itself. *See id.* at 12(b)(3)(A)-(B). In considering such a motion, the district court treats the allegations as true and construes the facts in the light most favorable to the government. *United States v. Burger*, 773 F. Supp. 1430, 1433 (D. Kan. 1991); *United States v. LaHue*, 998 F. Supp. 1182, 1184 (D. Kan. 1998).

## III.     ANALYSIS

Brown presents two alternative arguments for dismissal. First, Brown argues that errors in Agent Waters's testimony during grand jury proceedings warrant dismissal of the indictment as a whole. Second, to the extent the Court does not find that dismissal of the indictment is warranted, Brown alternatively argues that Counts 1, 2, and 4 should be dismissed because the undisputed evidence establishes that Brown cannot, as a matter of law, be convicted of those offenses. For the following reasons, the Court disagrees.

### A.      Dismissal of the Indictment Based on Errors in Grand Jury Proceedings

The Court first addresses Brown's argument regarding the allegedly false, misleading, and improper grand jury testimony. Rule 12(b)(3) permits a criminal defendant to seek pretrial dismissal based on "an error in the grand-jury proceeding." FED. R. CRIM. P. 12(b)(3)(A)(v). Such a dismissal, however, is only appropriate if the defendant has made a showing that he was

---

[3]     The grand jury also indicted Khanya as to Counts 1 and 2. *See* Doc. 1.

prejudiced as a result of the error. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

To establish prejudice, the defendant must show that the alleged error "substantially influenced

the grand jury's decision to indict, or . . . there is a grave doubt that the decision to indict was free

from the substantial influence of such violations." *Id.* (internal quotations omitted).[4]

Again, Brown takes issue with the three pieces of testimony identified in Part I.B, above.

Brown argues that the first two pieces of testimony—i.e., the testimony regarding the proximity

of his identification to the firearm and the testimony regarding the responding officers' beliefs

about to whom the firearm "belonged"—were false or misleading. And, though conceding that the

third piece of testimony was not actually false, Brown argues that it constituted an impermissible

comment on the invocation of his Fifth Amendment right to remain silent, which the prosecutor

failed to correct. Brown claims that these errors, taken as a whole, give rise to "grave doubt" that

the decision to indict was free from the substantial influence of such errors. Brown thus concludes

that dismissal is required.

But the Court disagrees that the alleged errors in Agent Waters's testimony warrant

dismissal. First, Brown fails to establish that any of the challenged testimony was actually false.

Brown contends the first piece of testimony—that his identification was found "right next to" the

firearm—was false because his identification was actually found on top of the front passenger seat

(in his wallet), while the firearm was found under the front passenger seat. Brown thus argues that

the two items were not "right next to" each other. But, as the government points out in its briefing,

the phrase "next to" can be open to multiple opinions. It is a subjective and relative phrase. It is

---

[4]   In the briefing, the parties point out that, in cases involving alleged errors in grand jury proceedings, the Tenth
     Circuit has made a distinction between "technical" or "procedural" errors that affect only the grand jury's finding
     of probable cause and errors that "threaten[ ] the defendant's right to fundamental fairness in the criminal
     process." *See United States v. Moya-Breton*, 329 F. App'x 839, 845 (10th Cir. 2009). But this distinction is not
     pertinent to the present motion because it is brought during the pretrial stage in the proceedings.

clear from the undisputed evidence that the identification was found very near to the firearm. Although most may consider the phrase "next to" to have a "lateral" meaning—i.e., items side-by-side in close physical proximity to each other—it was not necessarily wrong for Agent Waters to use the phrase to describe the location of Brown's identification.

Brown next argues the second piece of testimony—Agent Waters's statement that the officers on the scene believed the firearm "belonged to" Brown—was likewise false because there is no evidence the officers ever believed the firearm belonged to Brown, and, at most, officers believed he had possessed the firearm at some point, which is different than ownership. But Agent Waters was testifying as to whether he was aware of the officers' subjective beliefs regarding to whom the firearm belonged. The officers' belief regarding to whom the firearm belonged is opinion, rather than fact, and was reasonably inferred from the undisputed fact that the firearm was found under the seat in which Brown had been sitting.[5]

Second, even accepting Brown's position regarding the testimony's falsity, Brown has not provided any basis to conclude that the testimony substantially influenced the grand jury's decision to return an indictment. The whole of the testimony presented established that a witness reported shots fired from a car and that Brown was identified as a passenger in that car. An officer witnessed a firearm on the passenger side of the car (again, where Brown had been sitting). Brown's identification was also found in the car—and, even if not "right next to" the firearm, in close proximity to the firearm. Due to a prior felony conviction, Brown was not supposed to possess a firearm. And, finally, a large amount of drugs and cash were found in the trunk of the car (as well

---

[5]    In his motion, Brown relies on *United States v. Cooper*, 396 F. Supp. 3d 992 (D. Kan. 2019), and asserts that the issues in that case—which ultimately resulted in dismissal of the indictment—bear similarity to the issues here. But, in *Cooper*, which involved charges of sexual abuse, the testifying agent made a provably false statement about the results of the victim's medical exam. *See id.* at 993 (noting that "[t]he exam revealed no evidence of penetration" and agent testified that the exam was "indicative of some form of penetrative—some form of penetration"). Here, Agent Waters's testimony was not provably or demonstrably "false."

as on Khanya's person). Brown's motion does not contest the veracity of any of this testimony, which supports the charges against him. Brown thus has not established that the contested testimony had any effect on the ultimate decision to indict. *See United States v. Pino*, 708 F.2d 523, 530-31 (10th Cir. 1983) (allowing an indictment to stand even in case of perjured grand jury testimony where there is independent evidence to support the charges, based on the assumption the grand jury would have returned the indictment even without the perjurious testimony).

Turning to Brown's argument with respect to the testimony regarding the invocation of his Fifth Amendment rights, this argument also fails. Again, in his motion, Brown clarifies that he is not arguing that this testimony was "false," and, rather, simply argues that it was impermissible. But, as with the other pieces of testimony, the Court finds that Brown has not established that the reference to his invocation of rights substantially influenced the grand jury's decision to indict. The prosecutor asked a direct question and Agent Waters responded—albeit with more information than might have been ideal. Brown has not shown that Agent Waters's direct and truthful response to the prosecutor's question undermined the grand jury's inquiry or otherwise requires dismissal of the indictment. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1245-46 (10th Cir. 1996) (holding that a reference before the grand jury to the defendant's invocation of his constitutional rights "was a response to a question posed by a grand juror and not an impermissible attempt to infringe on the ability of the grand jury to exercise its own independent judgment in determining whether there was probable cause"). Nor has Brown shown that the prosecutor used or exploited that additional information to obtain the indictment.

In sum, Brown fails to establish that the alleged errors in Agent Waters's testimony (individually or collectively) "substantially influenced" the grand jury's decision to indict or that there is "grave doubt" that the decision to indict was free from the substantial influence of those

9

errors. The Court acknowledges that the testimony could have been more precise. But Brown has made no showing that he was prejudiced as a result of the testimony, and, therefore, his motion to dismiss the indictment is denied.

### B.        Dismissal of Counts 1, 2, and 4 Based on the Undisputed Evidence

The Court now turns to Brown's alternative argument: that, even if dismissal of the indictment as a whole is not warranted, Counts 1, 2, and 4 must be dismissed against Brown based on the undisputed evidence.

Generally, in considering a motion to dismiss an indictment, courts do not undertake any examination of the evidence. *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006). Rather, the inquiry at this stage is solely whether the allegations in the indictment, taken as true, are sufficient to establish a violation of the charged offense—not whether the government has presented sufficient evidence to support the charge. *Id.* Indeed, in his motion to dismiss, Brown concedes that in "the normal course of events . . . the jury decides guilt, following the presentation of evidence and instructions on the law." Doc. 55 at 25.

But Brown is correct that the Tenth Circuit has held that in "limited circumstances" the district court "may 'dismiss charges at the pretrial stage . . . where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination.'" *Todd*, 446 F.3d at 1068 (quoting *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)). Such a dismissal is a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt. *Id.*

This is what Brown asks the Court to find here: that the undisputed evidence establishes he cannot be convicted of Counts 1, 2, and 4 as a matter of law. But the focus of Brown's motion is not so much the undisputed evidence as it is the purported lack of evidence tying him to the drugs

found in the car (the presence of which ultimately form the basis for the offenses he seeks to dismiss). Brown also references and submits a document written by his co-defendant, Khanya, in which Khanya purports to take responsibility for the drug-distribution activities. In that document—titled "Letter of Acceptence" [sic] and dated October 9, 2019, approximately a month-and-a-half after the indictment—Khanya writes:

> I, Bounsouay Khanya, hereby accept responsibility for my actions the morning of May 10th, 2019. I accept Count 1 and 2, on the indictment, that I am being charged and detained on. My co-defendant didn't know or have any knowledge. I went to an adult saloon for a few drinks and dances. With that said I hope and wish Count 1, 2, and 4 be dismissed off him for lack of knowledge please and thank you.

The letter is signed by Khanya.

But the Court disagrees that the undisputed evidence—and Khanya's letter—establish that the government is incapable of proving Counts 1, 2, and 4 against Brown beyond a reasonable doubt. To the contrary, although there may well be gaps in the government's evidence, it is undisputed that Brown was found in a car with a large amount of cash (counted as $11,631.06), drugs (specifically, a total of 468 grams of marijuana, 552.3 grams of methamphetamine, and 56.86 grams of cocaine), and drug paraphernalia, and that there was a firearm under the seat in which he was riding. This is factual support that could lead a reasonable juror to find Brown guilty of the charged offenses. And with respect to the letter—although recognizing that, should Khanya maintain this position, it could pose hurdles for the government's case against Brown on these counts—at this juncture Khanya has not made any statement regarding these issues under penalty of perjury or in testimony before the Court (and subject to cross-examination), nor has he entered a guilty plea. Under these circumstances, the Court cannot find at this point in the proceedings that Brown could not have committed these offenses as a matter of law.

Finally, the Court notes that—although permitted—dismissal based on the undisputed evidence is "the rare exception, not the rule." *Todd*, 446 F.3d at 1068 (internal quotations omitted); *see also Hall*, 20 F.3d at 1088. This is not one of those rare cases. For all of these reasons, the Court denies Brown's motion to dismiss Counts 1, 2, and 4.

## IV.     CONCLUSION

THE COURT THEREFORE ORDERS that Defendant Antonio Brown's Motion to Dismiss the Indictment (Doc. 55) is DENIED.

IT IS SO ORDERED.

Dated: July 29, 2020                         /s/  *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE