**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                        Plaintiff,

v.                                                    Case Number: 19-40081-HLT

ANTONIO BROWN,

                        Defendant.

**ORDER**

The district judge referred Defendant Antonio Shannon Donovan Brown's Motion to Reopen Detention Hearing and for Release on Conditions (ECF 72) to the undersigned. *See* FED. R. CRIM. P. 59(a). Brown asks the court to reopen the detention hearing and authorize his release on conditions. The court initially detained Brown, for good reasons that still exist. Months later, Brown proposed a new release plan that appeared it might provide sufficient stability and structure to facilitate his compliance with conditions of release that were designed to reasonably assure that he would not pose a risk of harm to others. The court therefore released him on bond and gave him an opportunity to show that he could comply with release conditions. Instead, his approximately three-month release demonstrated that he is not amenable to supervision. His various widespread violations evidenced his lack of respect for his court-ordered release conditions. The "new information" he now relies on as grounds for the current motion does not persuade the court that he will suddenly reverse course and become law-abiding and compliant with release conditions when his past conduct strongly suggests otherwise. Therefore, he has not shown that the court can fashion conditions of release that will reasonably assure the safety of others. Accordingly, Brown's motion is denied.

I.      **Background**

The indictment charges Brown with four counts: (1) possession with intent to distribute 50 grams or more of methamphetamine, (2) possession with intent to distribute a mixture and substance containing cocaine, (3) possession of a firearm (a Walther 9mm caliber pistol) after having been previously convicted of aggravated robbery, and (4) possession of that firearm in furtherance of the drug trafficking crimes charged in Counts 1 and 2.   (ECF 1.)   These charges arose from an incident in which law enforcement officers responded to a call about shots being fired from a car in Lawrence, Kansas, during the early morning hours of May 10, 2019.   Officers saw co-defendant Bounsouay Khanya exit the driver's side of the vehicle in question, and they saw defendant Brown exit the front-seat passenger's side.   They found three spent 9mm shell casings on the ground at a location that indicated the shots were fired from the passenger side of the vehicle.   Under the front passenger seat, they found the Walther 9mm firearm.   On the front passenger seat, they found a loose 9mm bullet under a wallet containing Brown's identification. During a pat down of Khanya, they found a large sum of cash and six baggies with cocaine.   They found more cocaine, marijuana, methamphetamine, stacks of money, and drug paraphernalia in backpacks on the front driver's-side floorboard and in the trunk.   They also found another 9mm round and cell phones that belong to Khanya with text messages of him dealing drugs.   (ECF 71.)

Brown and Khanya were arrested and appeared before the court on August 26, 2019. Khanya waived a detention hearing, but Brown contested detention.   At the end of the detention hearing, the court ordered Brown detained pending trial because the court could not fashion conditions of release that would reasonably assure the safety of others.   The court relied on the nature and circumstances of the offenses charged, which suggested that Brown and Khanya were dealing drugs and that Brown fired shots from a vehicle in a public setting because all indicia of

gun use correlated to the passenger side of the vehicle; that Brown is facing a lengthy period of incarceration that is indicative of the seriousness and dangerousness of his conduct in the alleged offense; that the offense is a crime of violence involving gunshots fired at a nearby vehicle in a public setting; that the offense involves drug distribution activities and a firearm; and that the government appeared to have strong evidence against Brown.   In considering Brown's history and characteristics, the court recognized that he is unemployed; he has a history of drug use as shown by his failure to comply with release conditions relating to drug use and/or testing as required by his Douglas County probation officer(s); he has a significant prior criminal record, including convictions for aggravated robbery and attempted aggravated battery and numerous other arrests; and he has a prior record of failing to comply with conditions of release.   In addition, he was on probation at the time of the current offense.   And, the threat of his continued involvement with drugs and guns if he were released poses a serious risk of danger to the community.   (ECF 12.)

On October 30, 2019, Brown filed a Motion to Reopen Detention Hearing and for Release on Conditions, citing "new information."   (ECF 20.)   This new information included (1) a letter by Khanya accepting responsibility for the drug trafficking activity and acknowledging Brown had no part in it, (2) DNA tests results showing the DNA from the firearm could not be compared with Brown's DNA swab because the samples were of insufficient quality, and (3) Brown had a new release plan to live with his aunt in Lansing, Kansas.   Relying primarily on the third ground, the court granted Brown's motion on the conditions that (among other things) he reside with his aunt in Lansing and secure employment working 40+ hours per week by the next court hearing, which was scheduled for two weeks later.   (ECF 25, at 2.)

On January 24, 2020, Pretrial Services filed a petition to revoke Brown's bond.   (ECF 38.)

The alleged violations were widespread.   On January 5, 2020, he was involved in a domestic

dispute in Lawrence in which the alleged victim was Konner Durham.   During the incident,

Brown and Durham's three small children were in the backyard.   After the incident, domestic

violence charges were filed against Brown, Durham obtained a Protection from Abuse order

against him, and Brown continued to stalk, harass, and intimidate Durham.   Brown had also

violated his bond by violating his curfew (four times), failing to report for substance abuse

treatment and testing (four times), failing to maintain a job working 40+ hours a week, and losing

his place to live with his aunt in Lansing because she no longer wanted him living with her.

On February 13, the court revoked Brown's bond.   (ECF 42.)   The court found that no

conditions of release would reasonably assure that he would not pose a danger to the safety of

others given his pattern of domestic abuse, harassment, intimidation, and stalking of Durham;

subjecting others in Durham's vicinity during these incidents to a risk of harm, including their

three small children.   The court also found that Brown was unlikely to abide by any conditions

the court may impose given his pattern of disregard for his release conditions, which "leads the

court to believe that he has not and will not take those conditions of release sufficiently seriously."

(*Id.* at 2.)   The court noted that he was given an opportunity to succeed on pretrial release but

chose not to do so.   The court concluded that "[h]is violations are simply too varied, widespread,

and rampant to believe that he would succeed with a different release plan."   (*Id.*)

Mr. Brown now moves the court to reopen the detention hearing.   In support, he relies on

essentially two sets of facts.   First, he says he has a new release plan to live with his friend Lindsey

Stein, with whom he shares a four-year-old daughter.   Second, he points out that Durham recanted

part of the allegations from the January 5 incident and has since moved to Texas, so Brown would

not have contact with her even if he were released.

## II.      **Motion to Reopen Detention**

The court may reopen detention

> at any time before trial if the judicial officer finds that [1]
> information exists that was not known to the movant at the time of
> the hearing and [2] that has a material bearing on the issue whether
> there are conditions of release that will reasonably assure the
> appearance of the person as required and the safety of any other
> person in the community.

18 U.S.C. § 3142(f).   Here, Brown has not identified any new information that has a material

bearing on whether there are conditions of release that will reasonably assure the safety of others.

The court turns first to Brown's arguments about the risk of harm to Durham.   To begin,

the court is not persuaded that Durham recanting some of her allegations against Brown from the

January 5 incident constitutes new information.   Rather, it is merely evidence that she is the target

of his domestic abuse, as the evidence presented at the hearing on the petition to revoke Brown's

bond in February 2020 suggested that Brown harassed and intimidated Durham into recanting

some of her accusations against him.   The other aspect of Brown's new argument concerning

Durham is that she has since moved to Texas.   The court agrees that this constitutes new

information.   However, it does not have a material bearing on whether the court can impose

conditions of release that will reasonably assure the safety of others.

The court's original detention order found that Brown was a danger to the safety of others,

and nothing about this finding related to Brown's abuse of Durham.   To the contrary, the court

relied on the violent nature of the offenses charged, which involve drug dealing and guns; Brown's

prior failures to comply with the terms of his Douglas County probation relating to drug use and/or

testing; his significant prior criminal record for aggravated robbery and attempted aggravated battery and numerous other arrests; and, thus, the threat of his continued involvement with drugs and guns if he were released poses a serious risk of danger to the community.   The fact that Brown may now pose less of a risk of harm to Durham—whether because she supposedly recanted her testimony and/or because she moved to Texas—does not change the court's original finding that Brown's affinity for violence, drug dealing, and guns presents a risk of harm to the community at large.   Brown's domestic violence against Durham is simply one incident in Brown's string of violations during his three-month release, all of which showed he is not amenable to supervision. In addition to his abuse of Durham, he repeatedly violated his curfew, failed to report for drug testing and treatment, failed to maintain a job, and got kicked out of his aunt's house.   Residing with his aunt was key to the court's decision to release Brown on bond because: (1) she lived in Lansing, which the court hoped would remove Brown from his drug-dealing environment and other unfavorable influences in Lawrence, and (2) it appeared that living with his aunt would provide Brown with a stable and structured living arrangement.   That plan fell through when Brown chose not to abide by her rules so that he could continue to live in her home.

Lastly, the court turns to Brown's new proposed release plan to live with Stein and the four-year-old daughter that Brown and Stein share together.   Brown contends that this release plan will eliminate many of the struggles and obstacles he faced when last released on bond and will allow him to spend time with his family and find gainful employment.   But releasing Brown to live with Stein does not ameliorate the court's concerns that Brown's release would pose a risk of harm to others.   This release plan will place Brown right back in Lawrence, the long-time hub of his criminal behavior, including drug dealing, guns, and other violent crimes.   For similar reasons, he would likely continue to disregard all of the other court-ordered release conditions that

he previously violated, including his hollow promise that he would maintain gainful employment. Accordingly, his newly proposed release plan does not have a material bearing on whether the court can impose conditions of release that will reasonably assure that Brown will not pose a risk of harm to others if he were released.   As the court previously recognized, Brown "was given an opportunity to succeed on pretrial release and chose not to do so.   His violations are simply too varied, widespread, and rampant to believe that he would succeed with a different release plan." (ECF 42, at 2.)

For all of the above reasons, the court denies Mr. Brown's motion to reopen detention. But even if the court were to reopen detention, the court would still deny his motion for release for essentially the same reasons set forth in the court's prior detention orders (ECF 12 & 42), as well as the reasons set forth above.

**IT IS THEREFORE ORDERED** that Brown's Motion to Reopen Detention Hearing and for Release on Conditions (ECF 72) is denied.

**IT IS SO ORDERED**.

Dated this 10th day of September, 2020.

s/Angel D. Mitchell
Angel D. Mitchell
United States Magistrate Judge
